# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

DARNELL HUMPHREY,
    *Plaintiff*,

v.                                      Case No. 3:15-cv-01164 (JAM)

RENATO CREA, ANTHONY
TANGANELLI, MICHAEL SILVA, and
JUAN RIVERA,
    *Defendants*.

## ORDER RE POST-TRIAL MOTIONS

Plaintiff Darnell Humphrey sued four police officers—Renato Crea, Anthony Tanganelli, Michael Silva, and Juan Rivera—alleging that they violated his rights under federal and state law. Doc. #13. The lawsuit stemmed from an encounter that Humphrey had with the police officer defendants after he left a bar late one night in Waterbury, Connecticut. Humphrey alleged claims for false arrest, excessive force, intentional infliction of emotional distress, and malicious prosecution.

The case proceeded to trial in September 2018, and the jury returned a verdict concluding that Humphrey had proven his claims against Crea for the use of excessive force and for the intentional infliction of emotional distress. Doc. #72. The jury awarded compensatory damages of $38,000 against Crea as well as $30,000 of punitive damages against Crea in connection with the claim for intentional infliction of emotional distress. The jury otherwise concluded that Humphrey had not proven any of the remaining claims against Crea or any of the claims against the three other police officer defendants. The parties have filed post-trial motions, and I will consider each motion in turn.

1

### *Humphrey's motion to alter judgment or for new trial on damages*

Humphrey moves to alter the judgment or to order a new trial on damages. Doc. #77. According to Humphrey, the jury's compensatory damages award was flawed because the jury overlooked evidence of $121,158.05 in medical-related bills that Humphrey introduced into evidence. I note at the outset that Humphrey's motion is complicated by his failure to order trial transcripts and to cite to relevant portions of the record to support his characterizations of what the evidence shows. *See Carlton v. C.O. Pearson*, 384 F. Supp. 3d 382 (W.D.N.Y. 2019) ("Generally speaking, specific reliance upon the trial transcript is necessary to demonstrate one's entitlement to relief on a Rule 59 motion based upon determinations made at trial.").

Rule 59(a)(1)(A) of the Federal Rules of Civil Procedure allows for the grant of a new trial after a jury verdict "for any reason for which a new trial has heretofore been granted in an action at law in federal court." The Court may not disturb the jury's verdict under Rule 59 unless it is convinced that the jury reached a seriously erroneous result or that its verdict was otherwise a miscarriage of justice. *See Ali v. Kipp*, 891 F.3d 59, 64 (2d Cir. 2018). When confronted with competing interpretations of the evidence and the jury's findings, the Court must examine the record to determine whether it is possible to harmonize the jury's verdict with a reasonable view of the trial evidence. *Id.* at 65-66. The Court gives a high degree of deference to the jury's evaluation of witness credibility; jury verdicts should only rarely be overturned. *See ING Glob. v. United Parcel Serv. Oasis Supply Corp.*, 757 F.3d 92, 97-98 (2d Cir. 2014).[1]

As to the jury's decision not to award Humphrey his medical expenses, I am not

---

[1] Humphrey moves in general for relief under Rule 59 without specifying whether he seeks relief under Rule 59(a) for a new trial or under Rule 59(e) for an alteration of the judgment. Even if I understood Humphrey to be seeking relief under Rule 59(e), I would reach the same result in this ruling, because a Rule 59(e) motion may not be granted absent a showing of a clear error of law or manifest injustice. *See Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 153 (2d Cir. 2008).

convinced that the jury reached a seriously erroneous result or that its verdict was otherwise a miscarriage of justice. I reach this conclusion in part because the trial evidence left it uncertain whether Crea was responsible for the specific physical injuries to Humphrey that are the basis for his claimed medical expenses. Although Humphrey testified that Crea taunted him and then tried to bring him to the ground, Humphrey said he was struck by more than one officer and did not identify Crea as the person who inflicted the most serious blow that he received: the impact of a hard object to his eye that resulted in his hospitalization and extensive medical bills. For his part, Crea testified that he struck Humphrey in the head in self-defense, but the jury could reasonably have doubted whether it was Crea—rather than one of the other defendants—who inflicted the specific injuries to Humphrey that prompted the call for an ambulance, his subsequent hospitalization, and follow-up medical treatment.

Even if there were no doubt that it was Crea alone who inflicted the blow(s) that resulted in the claimed medical expenses, the jury's verdict against Crea for the use of excessive force may have been based solely on Crea's acknowledgment that he initially tackled Humphrey to the ground rather than on any subsequent blows by Crea to Humphrey's body. The jury may have concluded that any subsequent blows were not excessive in light of evidence of Humphrey's inebriation and resistance (or Crea's reasonable perception of such resistance).

The fact that the jury did not return a liability verdict against any of the three other defendants does not undermine this conclusion. If the jury was uncertain which of any of the defendants inflicted a particular blow, then the jury naturally could have concluded that Humphrey failed to carry his burden of proof as to any particular defendant.

All in all, it is possible to reasonably harmonize the trial evidence with the jury's damages verdict that excluded an award for medical expenses, and therefore it would be

3

inappropriate for me to grant a new trial. *See Ali*, 891 F.3d at 65 (affirming district court's denial of Rule 59 motion for new damages trial in case involving excessive force claim against police; "[t]he jury heard two different accounts of what transpired when Sergeant Kipp placed Ali in the cell," and "[t]he jury was free to conclude that the truth lay somewhere between these two versions of the relevant events," such that the jury could have concluded there was excessive force when the defendant initially brought the plaintiff into the cell but not excessive force as plaintiff claimed thereafter).

The jury's verdict findings are consistent with the view that the jury elected to award damages solely for actions other than those leading to Humphrey's medical expenses. The jury was instructed that any compensatory damages award may include economic damages and non-economic damages. Doc. #71 at 22. As to economic damages, the jury was instructed without objection that "[i]ncluded within your damages calculation if you decide to award damages should be compensation for any economic damages (such as loss of wages or any other out-of-pocket expenses) suffered by Mr. Humphrey if these damages were proximately caused by the unlawful conduct of any of the defendants." *Ibid.* Notwithstanding the introduction into evidence of Humphrey's many medical bills, the jury decided *not* to award Humphrey any economic damages. Doc. #72 at 5.[2]

As to non-economic damages, the jury was instructed that it may "award compensation for any non-economic injuries of emotional distress and suffering, humiliation, personal

---

[2] In light of the jury's question during deliberations inquiring about what Humphrey's out-of-pocket medical expenses were, Doc. #81 at 3, Humphrey's reply brief speculates that the jury may have been confused about whether the medical expenses were awardable. Doc. #81 at 3. But a party may not raise a new argument for the first time in a reply brief, and if Humphrey believed that the jury's note reflected confusion on this issue, then Humphrey should have requested that the Court issue an appropriate clarifying instruction at the time rather than waiting to seek an entirely new trial on damages which would essentially require a replication of all the evidence already presented over several days of trial. Instead, Humphrey assented at the time of trial to the Court's proposed response to the jury's question.

indignity, fear, anxiety, and anguish solely to the extent that such harm was the result of unlawful conduct." Doc. #71 at 22. The jury chose to award $38,000 to Humphrey in non-economic damages against Crea. Doc. #72 at 5.

Moreover, the jury was not asked to allocate its award of compensatory damages to any particular cause of action, and so there is no way to know how much of its award of $38,000 in non-economic damages was specific to the claim for excessive force as distinct from the claim for intentional infliction of emotional distress. By contrast, as to the jury's further award of $30,000 in punitive damages against Crea, the jury specifically assessed this award as to the claim for intentional infliction of emotional distress only, rather than to the claim for the use of excessive force. Doc. #72 at 6. Taken together, the jury's findings are consistent with a possibility that the jury based its damages verdict solely on Crea's taunting of Humphrey and tackling him to the ground rather than Crea's infliction of particular blows that caused medical expenses.

Humphrey argues in the alternative that the Court should simply enter an amended judgment to include $121,158.05 in medical costs. But the federal courts do not have "additur" authority to revise a jury's verdict to increase an award of damages. *See Dimick v. Schiedt*, 293 U.S. 474, 482 (1935); *Elyse v. Bridgeside Inc.*, 367 F. App'x 266, 267 (2d Cir. 2010) (collecting cases). Although Humphrey argues that there is an exception to this rule that allows a court to "simply adjust[] the jury award to account for a discrete item that manifestly should have been part of the damage calculations and as to whose amount there is no dispute," *Liriano v. Hobart Corp.*, 170 F.3d 264, 272 (2d Cir. 1999), for the reasons I have just described the evidence is not "manifestly" clear that Humphrey's medical bills should have been part of the jury's verdict. *See also Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 624 n.17 (2d Cir. 2001) *(*"Additur

5

is an appropriate remedy only in lieu of a new trial. And without a threshold determination that a plaintiff is entitled to a new trial, the alternative remedy of additur is unavailable."). Accordingly, I will deny Humphrey's motion to alter the judgment or to grant a new trial on damages.

*Defendants' motion to alter and/or amend judgment*

Defendants move to alter and/or amend the judgment in several respects, and plaintiff has not filed any objection to this motion. Defendants first argue that the judgment (Doc. #76) was incorrectly entered against not only defendant Renato Crea but also against defendants Anthony Tanganelli, Michael Silva, or Juan Rivera notwithstanding the lack of a proper jury finding of liability against these three additional defendants. I agree, and the judgment shall be amended to reflect a judgment in favor of each of these defendants. In particular, despite the jury's determination that Humphrey had not proved any of his claims against any of the defendants other than Crea, the jury decided to award $2,000 in compensatory damages against Rivera. Doc. #72 at 5. Because the jury did not make predicate findings for each of the elements for liability against Rivera as to any of the claims, there was no proper basis for the jury to award damages against Rivera. Accordingly, I set aside that jury determination of damages against Rivera as unlawful. *See Aczel v. Labonia*, 584 F.3d 52, 59 (2d Cir. 2009).

Defendants also argue that, if the Court awards attorney's fees pursuant to its statutory authority under 42 U.S.C. § 1988 in light of Humphrey's prevailing on his federal constitutional claim for the use of excessive force, then the judgment amount against Crea should be reduced by $30,000 to eliminate the jury's punitive damages award which the jury assessed as to Humphrey's state law claim for intentional infliction of emotional distress. They note that the proper measure of punitive damages for a Connecticut common law claim is a plaintiff's

6

attorney's fees and costs, *see Bifolck v. Philip Morris, Inc.*, 324 Conn. 402, 449 (2016); *Wolf v. Yamin*, 295 F.3d 303, 308 (2d Cir. 2002), and that the jury's punitive damages award would impermissibly duplicate the award of attorney's fees under § 1988. *See Lieberman v. Dudley*, 1998 WL 740827, at *4 (D. Conn. 1998), *aff'd on other grounds*, 199 F.3d 1322 (2d Cir. 1999). Because there is apparent merit to this argument and because (as explained in the next section of this ruling) I will award attorney's fees pursuant to 42 U.S.C. § 1988 that well exceed the amount that the jury awarded in punitive damages, I will set aside the jury's award of $30,000 in punitive damages on the ground that it is impermissibly duplicative of the attorney's fees to be separately awarded.

### *Plaintiff's motion for attorney's fees and costs*

Humphrey moves for an award of $117,435.96 in attorney's fees and costs. Doc. #78. Humphrey qualifies under 42 U.S.C. § 1988(b) and Fed. R. Civ. P. 54(d) for an award of attorney's fees and costs because he prevailed on his constitutional excessive force claim under 42 U.S.C § 1983. *See Lefemine v. Wideman*, 568 U.S. 1, 5 (2012) (*per curiam*). The Court must first determine a presumptively reasonable fee, based on a "lodestar" calculation of a reasonable hourly rate and the number of reasonably expended hours. *See, e.g.*, *Stanczyk v. City of New York*, 752 F.3d 273, 284–85 (2d Cir. 2014). The Court must then determine if this amount should be reduced to reflect the lack of degree of success at trial. *Ibid.*; *see also U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 415 (2d Cir. 1989) (listing multiple factors to be considered).

Plaintiff's calculation of attorney's fees is based on 172 hours expended by attorney Noah Kores at a rate of $350/hour and 119.5 hours expended by attorney John Gulash at a rate of $450 hour. Defendants argue that the rate requests of $350/hour and $450/hour are not

7

reasonable, because they are $50/hour above the rate that these attorneys ordinarily charge. I agree. The principal justification plaintiffs' attorneys give for their $50/hour fee hike is the "greater complexity of federal court" and its apparently "stricter adherence to procedure and evidence" than state court. I am certain my colleagues on the state bench would be quite surprised to learn that their adherence to procedure and evidence is laxer than mine, or that the Connecticut court system—whose Practice Book, I note, is a full 438 pages longer than its federal equivalent, the Federal Rules of Civil Procedure—is less complex than the federal system. There is no merit to the argument that federal cases are more complex, or indeed more prestigious or important, or worthier of higher fees, than identical proceedings in state court.

Therefore, I will adjust the respective rates for each attorney to their usual rates of $300/hour and $400/hour, which rates I find to be reasonable in light of the market and the attorneys' relevant experience. Defendants otherwise cursorily argue that the two attorneys' billings are duplicative, but I am convinced by the attorneys' submissions that the hours they spent are not duplicative and were otherwise reasonable in relation to the demanding needs of this case.

Defendants argue that the fee request should be reduced to account for the fact that Humphrey did not prevail on all his claims. I agree. As the Supreme Court has noted, the degree of success is the single most important factor to consider when a court decides upon an attorney's fees award. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *Kassim v. City of Schenectady*, 415 F.3d 246, 253 (2d Cir. 2005). Humphrey prevailed against only one of the four defendants and as to only half the claims he alleged against that one defendant. Three of the four police officer defendants were sued only to have the jury return verdicts that they were not liable on any of Humphrey's claims against them. Although Humphrey convinced the jury that Crea

used excessive force and intentionally inflicted emotional distress, he otherwise failed to prove that Crea falsely arrested Humphrey or that Crea engaged in malicious prosecution. Humphrey achieved considerably less than complete success in this lawsuit.

On the other hand, the claims against the four defendants were largely overlapping in nature—all arising from a single incident and involving allegedly related misconduct. It would not be appropriate to cut the attorney's fee award by a strict ratio of the number of claims on which Humphrey prevailed and the number of claims on which he did not prevail. For such "unitary" event cases, the Court's focus must be on "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation," while recognizing that for "a plaintiff [who] has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount." *Kassim*, 415 F.3d at 253 (internal quotation marks omitted). Here, notwithstanding the lack of complete success against all defendants, it is significant that Humphrey proved a very serious and intentional violation of his Constitutional rights that resulted in a substantial jury award in his favor.

Still an additional consideration is the degree of success in terms of a damages award as to the two claims on which Humphrey prevailed against Crea. As discussed above, it is uncertain—in light of the jury's decision not to award any economic damages—whether the jury was convinced that Crea's use of excessive force involved not merely his initial takedown of Humphrey but also the additional blows to Humphrey that required his hospitalization. This uncertainty is an additional factor that weighs in favor of a modest reduction in the attorney's fee award.

On the basis of all these considerations, I conclude in my discretion that it is appropriate

to reduce by a factor of 1/3 the total attorney's fee award to account for the lack of complete success by Humphrey on his claims. Accordingly, the attorney's fee award shall be calculated as follows: 172 hours at $300/hour for Mr. Kores plus 119.5 hours at $400/hour for Mr. Gulash (subtotal: $99,400), subject to a 1/3 reduction to account for lack of complete success, resulting in a total attorney's fee award of $66,266.66. Because defendants do not object to Humphrey's cost request for $3,460.96, I will therefore grant the motion for attorney's fees and costs in the total amount of $69,726.66. Any other objections not raised by defendants are deemed waived.

## CONCLUSION

For the reasons stated in this ruling, plaintiff's motion to alter the judgment and/or for a new trial on damages (Doc. #77) is DENIED. Defendants' motion to alter and/or amend the judgment (Doc. #79) is GRANTED. Plaintiff's motion for award of attorney's fees and costs (Doc. #78) is GRANTED IN PART.

In light of this ruling, the Clerk of Court shall prepare and enter an amended judgment reflecting a judgment for plaintiff Darnell Humphrey against defendant Renato Crea in the total amount of $107,727.62 (comprising the sum of $38,000 in non-economic compensatory damages, $66,266.66 in attorney's fees, and $3,460.96 in costs). The amended judgment shall further reflect judgment in favor of defendant Anthony Tanganelli, Michael Silva, and Juan Rivera on all of plaintiff Darnell Humphrey's claims against them.

It is so ordered.

Dated at New Haven this 6th day of August 2019.

/s/*Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge